IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.   Criminal Action No. **3:15CR19**

**DEANDRE YELLARDY,**

Petitioner.

## MEMORANDUM OPINION

DeAndre Yellardy, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 Motion ("§ 2255 Motion," ECF No. 37). Yellardy demands relief upon the following grounds:

| | |
|---|---|
| Claim One | The Government violated Yellardy's right to a speedy trial. (ECF No. 37–1, at 1.) |
| Claim Two | The Government violated Yellardy's right to due process when he "was transferred from state custody to federal custody 'without being advised or given notice' that he was going to be tried federally." (*Id.* at 2.) |
| Claim Three | Yellardy failed to receive the effective assistance of counsel when counsel failed to raise Claims One, Two, and Four. (*Id.* at 3–4.) |
| Claim Four | "Yellardy challenges his sentence on the grounds that he [was] unjustly denied a Three-Level (3) reduction based upon acceptance of responsibility under 3E1.1." (*Id.* at 4.) |

The Government responds that Claims One, Two, and Four are procedurally defaulted and that Yellardy's assertions that he was denied the effective assistance of counsel lack merit. (ECF No. 40.) Yellardy has filed a Reply. (ECF No. 41.)[1] For the reasons set forth below, Yellardy's claims will be dismissed as procedurally defaulted and meritless.

---

[1] In his Reply, Yellardy argues that ineffective assistance of counsel constitutes cause to excuse his defaults and further argues why his claims have merit. Yellardy, however, also makes some assertions of legal error that bear little relation to the claims raised in his § 2255 Motion. For example, Yellardy contends that his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated by the "failure to disclose an impending federal indictment . . . ." (ECF No. 41, at

## I. Pertinent Factual and Procedural History

On June 12, 2014, Yellardy shot two individuals who were seated in their vehicle at an EZ Mart convenience store in Richmond, Virginia. (ECF No. 17, at 1–2.) The Richmond Police Department arrested Yellardy that same day. (*Id.* at 2.) As pertinent here, Yellardy was charged in the Circuit Court of the City of Richmond ("Circuit Court") with Possession of a Firearm with a Controlled Substance ("State Firearm Charge"). (ECF No. 24, at 13.) Yellardy "remained in continuous custody [after] his arrest on June 12, 2014." (ECF No. 17, at 2.)

On January 23, 2015, this Court issued a Criminal Complaint and arrest warrant charging Yellardy with possession of a firearm by a convicted felon ("Federal Firearm Charge"). (ECF No. 1.) The arrest warrant apparently was lodged as a detainer with the state authorities. On January 27, 2015, the Circuit Court nolle prossed Yellardy's State Firearm Charge, and Yellardy was held thereafter on the federal arrest warrant. (ECF No. 24, at 13.) On January 29, 2015, federal officials formally arrested Yellardy on the Federal Firearm Charge. (ECF No. 3.) Later that same day, Yellardy appeared in this Court for his initial appearance on that charge. (ECF No. 4.) On February 3, 2015, Yellardy was indicted on one count of possession of a firearm by a convicted felon. (ECF No. 10.)

On February 10, 2015, Yellardy appeared in this Court for his arraignment on the Federal Firearm Charge. (ECF No. 12.) Yellardy moved for a continuance beyond the Speedy Trial Act

---

9.) As Yellardy did not seek leave to amend, the Court is neither obliged nor inclined to construe the Reply as a motion so he may raise entirely new grounds for relief based on arguments set forth in his Reply. *See Snyder v. United States*, 263 F. App'x 778, 779 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); *Hull v. United States*, Nos. RWT 05–0109, RWT 06–1593, 2008 WL 4181946, at *3–4 (D. Md. Sept. 5, 2008); *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citing cases for the proposition that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs").

cut-off date, which the Court granted. (ECF No. 13.) That same day, the Court scheduled Yellardy's trial for April 22, 2015. (ECF No. 12.)

On March 20, 2015, pursuant to a Plea Agreement, Yellardy pled guilty to the Federal Firearm Charge. (ECF Nos. 15, 16.) As part of the Plea Agreement, the parties agreed that Yellardy should be sentenced to the statutory maximum sentence of 120 months and receive a 3-level reduction for acceptance of responsibility. (ECF No. 16, at 2.) On July 1, 2015, the Court sentenced Yellardy to 120 months of imprisonment. (ECF No. 29.)

## II. Analysis

The procedural default rule bars from review Claims One, Two, and Four, absent a showing of cause and prejudice or actual innocence, because Yellardy could have—but did not—raise these claims at trial or on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). Yellardy contends that the ineffective assistance counsel rendered him constitutes cause to excuse his default of Claims One, Two, and Four. That contention lacks merit for the reasons discussed below. Accordingly, Claims One, Two, and Four will be DISMISSED.

## III. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show

3

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Speedy Trial Challenges

Yellardy faults counsel for failing to protect his right to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161. The Speedy Trial Act, provides in pertinent part that:

> **(b)** Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. . . .
> **(c)(1)** In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. . . .

18 U.S.C. § 3161.

Yellardy contends:

> Typically, a person brought before the Court[] pursuant to §3161[] that no more than 30 days pass between arrest and indictment, pursuant to §3161 no more than 70 days pass between indictment and trial.
> Yellardy's custody of "nine months" was an unprecedented amount of time for his case to remain idle . . . .

(ECF No. 37–1, at 1.)

Yellardy fails to distinguish between his arrest on the State Firearm Charge and his arrest on his Federal Firearm Charge. The Speedy Trial "Act applies only to federal prosecutions [and] it is only a federal arrest, not a state arrest, which will trigger the commencement of the time limits set in the Act." *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982). This is so

4

because the Speedy Trial "Act is consistent with the doctrine of dual sovereignty, which recognizes that the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible." *Id.* (citations omitted) (internal quotation marks omitted).

The record reflects that the Circuit Court nolle prossed the State Firearm Charge on January 27, 2015, and that Yellardy was arrested on his Federal Firearm Charge two days later. Thus, the limitations period under the Speedy Trial Act did not commence until January 27, 2015, when Yellardy was being held on the federal arrest warrant. *See United States v. Woolfolk*, 399 F.3d 590, 596 (4th Cir. 2005) (concluding the Speedy Trial Act clock commences only when "the Government knew or should have known that the defendant was restrained solely to answer federal charges"). As Yellardy was timely indicted on February 3, 2015, for the Federal Firearm Charge, no violation of the thirty-day period set forth in 18 U.S.C. § 3161(b) occurred. Thus, counsel was not deficient nor was Yellardy prejudiced by counsel's failure to pursue such a claim.[2]

Yellardy also tersely suggests that his right to a speedy trial under the Sixth Amendment[3] was violated. The Sixth Amendment's speedy trial protection is triggered only by "a formal indictment or information or else [by] the actual restraints imposed by arrest and holding to answer a criminal charge . . . ." *United States v. Marion*, 404 U.S. 307, 320 (1971); *see United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995) (finding that a "defendant must show first that the [Sixth] Amendment's protections have been triggered by 'arrest, indictment, or other official

---

[2] To the extent that Yellardy contends that Virginia officials violated his right under Virginia law to a speedy trial pursuant to Va. Code § 19.2–243, (*see* ECF No. 41, at 7–8), his remedy, if any, lies in the Virginia courts.

[3] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.

5

accusation'" (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992))). Thus, Yellardy had no entitlement to the Sixth Amendment's protections for his Federal Firearm Charge until he was taken into federal custody on that charge on January 27, 2015. Contrary to Yellardy's suggestion, an arrest on a state charge fails to engage the speedy trial protections under the Sixth Amendment for a subsequent federal charge. *United States v. Dowdell*, 595 F.3d 50, 62 (1st Cir. 2010) ("The speed of a federal trial is measured from the federal accusation on which it is based; one sovereign's enforcement of its own criminal laws is not attributable to another sovereign merely because of the presence of investigatory assistance, prosecutorial collaboration, or overlap among charges."); *United States v. Garner*, 32 F.3d 1305, 1309 (8th Cir. 1994) (citations omitted) (observing that an "arrest on state charges does not engage the [Sixth Amendment] speedy trial protection for a subsequent federal charge"). As Yellardy pled guilty within two months of being charged with Federal Firearm Charge, counsel reasonably eschewed pursuing a claim that Yellardy's constitutional right to a speedy trial was violated. Accordingly, Yellardy fails to demonstrate counsel performed deficiently or that he was prejudiced by counsel's failure to pursue any speedy trial challenge.

### B. <u>Alleged Due Process Violation</u>

In Claim Two, Yellardy contends that the Government violated his right to due process when he "was transferred from state custody to federal custody 'without being advised or given notice' that he was going to be tried federally." (ECF No. 37–1, at 2.) Prior to being charged federally, Yellardy did not enjoy a due process right to know that he might be charged federally. *Cf. In re Amgen Inc.*, No. 10–MC–0249 (SLT) (JO), 2011 WL 2442047, at *13 (E.D.N.Y. Apr. 6, 2011) ("[T]he target of a grand jury investigation has no right to know of its existence; to the contrary, the investigation is meant to proceed entirely in secret." (citing *United States v.*

*Williams*, 504 U.S. 36, 48 (1992); *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 299 (1991))), *report and recommendation adopted*, No. 10–MC–249 (SLT) (JO), 2011 WL 2418815 (E.D.N.Y. June 14, 2011). The record reflects that Yellardy was provided ample, prompt notice once he was charged federally: on January 23, 2015, this Court issued a Criminal Complaint and arrest warrant charging Yellardy with possession of a firearm by a convicted felon, (ECF No. 1); on January 29, 2015, federal officials formally arrested Yellardy on the Federal Firearm Charge, (ECF No. 3); later that same day, Yellardy appeared in this Court for his initial appearance on that charge, (ECF No. 4); on February 3, 2015, Yellardy was indicted on the Federal Firearm Charge, (ECF No. 10); and on February 10, 2015, Yellardy was arraigned on the Federal Firearm Charge, (ECF No. 12). Given these circumstances, counsel reasonably eschewed raising the due process challenge Yellardy urges here. *Cf. Fisher v. Cervantes*, No. 9:10–CV–110, 2011 WL 5513439, at *12 (E.D. Tex. Sept. 12, 2011) (rejecting plaintiff's claim that he had a constitutional right to be advised that he was the target of a criminal investigation), *report and recommendation adopted*, No. 9:10CV–110, 2011 WL 5513388 (E.D. Tex. Nov. 9, 2011).

### C. Acceptance of Responsibility

In Claim Four, Yellardy contends that he was "unjustly denied a Three-Level (3) reduction based upon acceptance of responsibility under 3E1.1." (ECF No. 37–1, at 4.) The record plainly contravenes this claim. The Government moved for and Yellardy received a 3-level decrease to his Offense Level for Acceptance of Responsibility. (ECF No. 24, at 7; ECF No. 28, at 1.) Nevertheless, because Yellardy used the firearm in conjunction with an assault with intent to commit murder, his Base Offense Level was 33. (ECF No. 24, at 6.) Additionally, Yellardy received a two-level increase because the victim sustained a serious bodily injury. (*Id.*) Thus, even after the 3-level decrease to his Offense Level for Acceptance of Responsibility,

Yellardy had a Total Offense Level of 32 and a Criminal History Category of III, resulting in an advisory guideline range of 151–188 months. (ECF No. 24, at 18), U.S. GUIDELINES MANUAL, ch. 5, pt. A (sentencing table) (U.S. Sentencing Comm'n 2015). Accordingly, counsel reasonably refrained from objecting that Yellardy had not received a 3-level decrease in his Offense Level for Acceptance of Responsibility.

## IV. Conclusion

Yellardy's request to proceed *in forma pauperis* (ECF No. 38) will be GRANTED. The § 2255 Motion (ECF No. 37) will be DENIED. Yellardy's claims and the action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: JUN 03 2019
Richmond, Virginia